Opinion filed December 16,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00037-CR

                                                    __________

 

                            PERRY
MONTEZ JOHNSON, Appellant  

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                       On
Appeal from the County Criminal District Court No. 2

 

                                                          Tarrant
County, Texas

 

                                                  Trial
Court Cause No. 1131094R

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The jury convicted Perry Montez Johnson of aggravated assault causing bodily injury. 
The trial court assessed his punishment at confinement in the Institutional
Division of the Texas Department of Criminal Justice for a term of fifteen
years.  Appellant challenges his conviction in three issues.  We modify and affirm.

Background
Facts

Appellant
was charged by three counts in the indictment with assaulting Simeauli Tia’i. 
He was charged in Count One with intentionally or knowingly causing serious
bodily injury to a disabled individual by hitting Tia’i with his hand or by
twisting her arm with his hand, a first degree felony.  Tex. Penal Code Ann. § 22.04(a)(1), (e) (Vernon Supp. 2010). 
In Count Two, he was charged with intentionally or knowingly causing serious
bodily injury to Tia’i by hitting her with his hand or by twisting her arm with
his hand, a second degree felony.  Tex.
Penal Code Ann. § 22.02(a)(1), (b) (Vernon Supp. 2010).  He was charged
in Count Three with intentionally or knowingly causing bodily injury to Tia’i,
a disabled individual, by choking her with his hand, by hitting her with his
hand, or by twisting her arm with his hand, a third degree felony.  Tex. Penal Code Ann. § 22.04(a)(3), (f)
(Vernon Supp. 2010). 

The
jury acquitted appellant of the first degree felony alleged in Count One but
convicted him of the second degree felony alleged in Count Two.  With respect
to the third count, the jury only found appellant guilty of the lesser included
offense of assault causing bodily injury, a Class A misdemeanor.  Tex. Penal Code Ann. § 22.01(a)(1), (b)
(Vernon Supp. 2010).  After the trial court received the jury’s verdict on
guilt/innocence, the State announced in open court that it would waive any
further proceedings on Count Three based upon its belief that the lesser
included offense found by the jury also constituted a lesser included offense
of the offense alleged in Count Two.  The trial court accepted the State’s
waiver on Count Three and proceeded to punishment only on Count Two.

Tia’i
is from American Samoa.  She was twenty-four years old at the time of trial in
2008.  She moved to Texas in 2003 from American Samoa to live with her older
sister, Mafatu Moi, after their mother died.  Tia’i resided with Moi at her
apartment located at the Parkside Townhomes in Arlington.  Dr. Helen Ferguson,
a psychologist with MHMR of Tarrant County, testified that Tia’i is mildly
mentally retarded based upon her IQ score of 67.  Moi testified that Tia’i’s
native language is Samoan.

            Tia’i
identified appellant at trial as her attacker.  She testified that she only knew
him by the name “Midas.”  She met him one day in the parking lot of the
apartment complex when he was working on his car as she was walking by.  Tia’i
testified that appellant offered to be her “secret friend” during this initial
meeting after he learned that she was single.  He also showed her where he
lived in the complex.  Tia’i subsequently went to appellant’s apartment on
multiple occasions to visit him.  She testified that they engaged in sexual
activity during these visits.  During one of these visits, appellant told Tia’i
that he was behind on his rent.  In response to his request for financial
assistance, Tia’i discussed asking for financial help for appellant from her church.

            Tia’i
ultimately decided not to ask her church for financial assistance for
appellant.  On the morning of Sunday, November 19, 2006, Tia’i went to
appellant’s apartment to tell him that she would not be able to help him with
his finances.  In this regard, Tia’i testified that appellant told her that
this was the last day for him to raise the money that he needed in order to
avoid eviction.  Tia’i testified that appellant became angry with her when she
told him that she would not be able to help him raise the funds and that he
called her a “liar” and a “bitch.”  He then grabbed her by the neck with both
of his hands and choked her.  Appellant subsequently threw Tia’i against a wall,
causing her to fall on the floor on top of her left arm.  She testified that
her left arm began to hurt “pretty bad” at this point and that she believed it
was broken.   Appellant subsequently permitted Tia’i to leave his apartment
after she promised to not tell her sister about the attack and to provide
appellant with the money that he was seeking.  The orthopedic surgeon that
treated Tia’i testified that she suffered a fractured humerus bone in her left
arm that he characterized as a serious bodily injury because she suffered a
loss of function over a protracted period of time with a possibility that the loss
of function would be indefinite.

            Wendy
Haines was the manager of Parkside Townhomes in November 2006.  She testified
that appellant had resided in apartment no. 2003 since November 2005.  This is
the same apartment that Tia’i identified as the apartment where “Midas” lived. 
Haines stated that appellant became delinquent on his rent in October 2006. She
filed eviction proceedings against him on October 27, 2006, and she obtained an
order for eviction on November 6, 2006.  She obtained a writ of eviction on
November 20, 2006, (the day following the assault) which the constable’s office
enforced on November 22, 2006, by supervising the removal of appellant’s
furniture from the apartment.

Variance
Between Indictment and Proof

Appellant
asserts in his third issue that the evidence was legally insufficient to
support his conviction because the evidence offered at trial varied from the
facts alleged in the indictment.  Specifically, Count Two of the indictment
alleged that he caused serious bodily injury to Tia’i by hitting her with his
hand or by twisting her arm with his hand.  Appellant directs our attention to
the evidence that Tia’i’s arm was broken as a result of being thrown against a
wall and falling to the floor.

When a defendant bases a legal sufficiency challenge on an alleged variance between the allegation in a charging
instrument and the proof at trial, we evaluate the evidence against the
elements of the offense as defined by the hypothetically correct jury charge
for the case.  Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim. App.
2002); Gollihar v. State, 46 S.W.3d 243, 255-56 (Tex. Crim. App. 2001); Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A variance between the charging instrument and the proof at trial will only result in legally
insufficient evidence when the variance is a material variance. Fuller, 73
S.W.3d at 253; Gollihar, 46 S.W.3d at 257.  A variance will be construed
to be a material variance when the variance deprives the defendant of notice of
the charges or when the variance subjects the defendant to the risk of later
being prosecuted for the same offense.  Fuller, 73 S.W.3d at 253; Gollihar,
46 S.W.3d at 257.

The
State has cited Matthews v. State, No. 07-07-0482-CR, 2008 WL 4889991
(Tex. App.—Amarillo Nov. 13, 2008, no pet.) (mem. op., not designated for
publication), as a case involving a similar variance.  The indictment in Matthews
charged the defendant with assault by grabbing the victim’s arm and twisting it
and by grabbing her by the throat.  Id. at *2.  The evidence indicated
that the defendant injured the victim by grabbing her around the ribs while
holding her arms down and squeezing very tightly.  Id. 
The court determined that this variance did not constitute a material variance
under Fuller and Gollihar.  It based its determination on the
substantive elements of assault – that the defendant intentionally, knowingly,
or recklessly caused bodily injury to another.  Id. at *3.  The court
held as follows:  

The fact that the State alleged a factual method of appellant’s causing the pain that
was at odds with the proof at trial does not create a material variance. The
culpable conduct was alleged in a manner to give appellant notice of the crime
he was called upon to defend, an assault of the named victim on the alleged
date in question. Further, appellant has never claimed that he did not know
that he was defending himself against a charge of assault nor has he ever
claimed surprise at the proof or allegations. Finally, since the entire record
is reviewed in the case of a claim of double jeopardy, in the event of
subsequent prosecution, appellant is not endangered of subsequent prosecution
for the same culpable conduct.  See United States v. Apodaca, 843 F.2d
421, 430 n. 3 (10th Cir.), cert. denied, 488 U.S. 932, 109 S.Ct. 325,
102 L.Ed.2d 342 (1988).

 

Id.  

We
conclude that the court correctly analyzed the variance in Matthews
under the holdings in Fuller and Gollihar.  The circumstances in Matthews
are analogous to the variance in this appeal.  Count Two of the indictment
charged appellant with the substantive elements of intentionally or knowingly
causing serious bodily injury to Tia’i.  The indictment
sufficiently informed appellant of the charges to allow him to prepare an
adequate defense and to defeat an attempt to subsequently prosecute him for the
same offense.  The variance at issue is not material because it only concerned
the method by which appellant caused the serious bodily injury.   Appellant’s
third issue is overruled.

In-Court
Identification

            Appellant
asserts in his first issue that the trial court erred in overruling his motion
to suppress Tia’i’s in-court identification of him as her attacker based upon
an impermissibly suggestive pretrial photo lineup.  The trial court conducted a
pretrial hearing on appellant’s motion.  Detective Becky Szatkowski of the
Arlington Police Department testified that Tia’i initially provided her with
the attacker’s nickname and apartment number.  Detective Szatkowski then
contacted the apartment manger to find out his actual name.  She prepared a
photo lineup containing appellant’s Texas identification photo for Tia’i to
review.  Detective Szatkowski testified that she showed Tia’i the group of
photos that she had assembled and asked Tia’i if she recognized anyone in the
photos.  Tia’i immediately identified appellant’s photo as being a photo of the
person she knew as “Midas” that broke her arm.

            Tia’i
appeared at times to give a different version of the manner in which Detective Szatkowski
conducted the photo lineup.  In this regard, she gave the following answers
when questioned about the photo lineup:

Q.        Did the detective tell you which person did that to you?

 

A.        Yes, ma’am.

 

Q.        How
did – how did the detective tell you – did she tell you what picture to point
to?

 

A.        Yes.

 

Q.        How did she tell you what picture to point to?

 

A.        She
was asking me, can you show me any of these pictures, um, that you can see,
Midas in this pictures.

 

Q.        Did she tell you which picture was Midas?

 

A.        Yes.

 

Q.        How did she tell – did you tell her what picture was Midas?

 

A.        She
was asking me.  Show – she wanted me to just point my finger and if any of the
pictures was lineup – if I remember – if I recognize how Midas looked like.

 

. .
. .

 

Q.        Did the detective tell you what picture she wanted you to point
at?

 

A.        Yes.

 

Q.        And what picture did she tell you to point at?

 

A.        A picture of Midas.

 

Q.        Okay.  Did she tell you which one was Midas?

 

A.        Yes.

 

Q.        How did she tell you which one was Midas?

 

A.        She say can you show me where Midas [is] in this pictures.

 

Q.        Okay.

 

A.        So I went ahead and showed it to her.

 

Q.
       Okay.  Before you told her which picture belonged to Midas, did she tell
you which picture belonged to Midas?

 

A.        Yes.

 

O.        Okay.  If she told you what picture belonged to Midas, why did
you have                          to tell her?

 

A.        I’m confusing.

 

. .
. .

 

Q.        Okay. 
When the detective showed you the pictures, did she say I’m pointing to Midas,
pick out Midas?

 

A.        No, that’s not the way she – let me show her how Midas looked
like.

 

Q.        Okay. 
So when she brought you the pictures – did they look like this when she brought
them to you?

 

A.        Yes.

 

Q.        What did she tell you?

 

A.        For
example, like you’re my detective and I’m here and then you show me the
pictures of all these mens, so.  And then you ask me can you show me Midas in
this pictures.  So I went ahead and point finger right here and I told her.

 

Q.        And
when she showed it to you, did she use her finger and say pick him or pick him
or pick him?

 

A.        No.

 

Q.        Okay.  So did she tell you which picture belonged to Midas?

 

A.        Yes, ma’am.

 

Q.        Okay. 
How did she tell you which picture belonged to Midas?  Did she tell you which
picture belonged to Midas or did you tell her which picture belonged to Midas?

 

A.        I’m the one who told her.

 

Q.        You told her who Midas was?

 

A.        Yes.

 

Q.        Did she tell you who Midas was?

 

A.        She didn’t tell me who Midas was.

 

Appellant
contends that the photo lineup was impermissibly suggestive based upon Tia’i’s
earlier responses that seemed to indicate that Detective Szatkowski told her at
the outset which photo to select in the photo lineup.  We disagree.

The question of whether a pretrial photo identification procedure was so impermissibly
suggestive that it may have tainted an in-court identification is reviewed de
novo. Gamboa v. State, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009).  We
consider the totality of the circumstances in making this determination.  Id.
We apply a two-step inquiry: (1) whether the pretrial identification procedure
was impermissibly suggestive and, if so, (2) whether the impermissibly
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification at trial.  Simmons v. United States, 390 U.S. 377, 384
(1968); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). 

            A
defendant bears the burden of establishing by clear and convincing evidence that
the pretrial identification procedure was impermissibly suggestive. Barley,
906 S.W.2d at 33-34. When the trial court does not make express findings of
fact and conclusions of law, we assume the court made implicit findings of fact
in support of its ruling as long as such findings are supported by the record. Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).  Accordingly, we
presume that the trial court determined that Detective Szatkowski did not
conduct the photo lineup in an impermissible manner.  This determination rested
upon the trial court’s evaluation of the credibility of Detective Szatkowski
and Tia’i.  At a suppression hearing, the trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).   As the sole judge
of the witnesses’ testimony, the trial court was free to resolve the
inconsistencies in Tia’i’s testimony in support of Detective Szatkowski’s
version of the events.  We note in this regard the difficulties that Tia’i had
in communicating in English, her second language.  Accordingly, the trial court
did not err in determining that the pretrial identification procedure was not
impermissibly suggestive.

            Furthermore,
the record does not show that the pretrial lineup gave rise to a substantial
likelihood that Tia’i misidentified appellant as her attacker at trial.  Tia’i
had visited appellant in his apartment on multiple occasions prior to the
assault.  Their dealings with each other progressed to the point of a sexual
relationship.  Accordingly, appellant knew who assaulted her; she just did not
know his actual name.  The photo lineup simply served the purpose of confirming
appellant’s correct name.  Appellant’s first issue is overruled.    

Jury
Note

            In
his second issue, appellant contends that the trial court erred in its response
to a note from the jury requesting to have a witness’s testimony read back. 
The note from the jury stated as follows:  

Jury
Note #2

Some jury members
remember hearing that Bob knocked on [appellant’s door] on the morning of
November 19th.  Other jury members do not believe this was said.  Can we please
see the testimony from [Moi][1]
regarding this point?  Thank You  

 

The trial court
responded to the request in the following manner:  

        In answer to
your Jury Note Number 2, after having searched the Court Reporter’s notes,
there was no testimony found regarding the area in dispute in [Moi’s]
testimony.  Please refer to the Charge of the Court, and continue your
deliberations. 

 

“Bob” is Moi’s
boyfriend.  Tia’i testified that Bob went to appellant’s apartment on the
morning of the assault and that “[appellant] wasn’t there.”  Moi, however, did
not testify about Bob going to appellant’s apartment.  Accordingly, the trial
court instructed the jury that there was no testimony from Moi about Bob going
to appellant’s apartment.  Appellant contends that the trial court erred by not
providing the jury with Tia’i’s testimony on this subject instead.  

Tex. Code Crim. Proc. Ann. art. 36.28
(Vernon 2006) provides:

In
the trial of a criminal case in a court of record, if the jury disagree as to
the statement of any witness they may, upon applying to the court, have read to
them from the court reporter’s notes that part of such witness testimony or the
particular point in dispute, and no other. 

 

When the jury asks that certain testimony be reread, the trial court must first determine
if the request is proper under Article 36.28.  Howell v. State, 175
S.W.3d 786, 790 (Tex. Crim. App. 2005) (citing Moore v. State, 874
S.W.2d 671, 673 (Tex. Crim. App. 1994)).  A request for testimony is proper
under Article 36.28 if it reflects that the jurors disagree about a specified
part of testimony.  Id.  If the request is proper, the trial court must
interpret the communication, decide which sections of the testimony will best
answer the inquiry, and then limit the rereading accordingly.  Brown v.
State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). The trial court’s decision
will not be disturbed unless a clear abuse of discretion and harm are shown.  Id.;
see also Howell, 175 S.W.3d at 790.

The
jury only requested that Moi’s testimony be read back.  The trial court did not
abuse its discretion by not providing the jury with testimony from other
witnesses when the jury specifically limited its request to one witness’s
testimony.  When the jury requests the reading of only a specific and limited
portion of testimony, the trial court does not abuse its discretion by
providing only the requested information.  See Robison v. State, 888
S.W.2d 473, 481 (Tex. Crim. App. 1994); Jones v. State, 706 S.W.2d 664,
667 (Tex. Crim. App. 1986).  The trial court correctly informed the jury that
Moi did not testify about the matter in disagreement.  Had the jury wanted to
hear the testimony of additional witnesses on this question, it could have
asked the trial court in a subsequent jury note.  Appellant’s second issue is
overruled.

Clerical
Error in Trial Court’s Judgment

            The
trial court’s judgment states that the jury assessed appellant’s punishment. 
The reporter’s record indicates that the trial court actually assessed
appellant’s punishment.  We modify the trial court’s judgment to correct this
clerical error.  

This
Court’s Ruling

             The
judgment of the trial court is modified to reflect that the trial court
assessed punishment.  As modified, the judgment of the trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

December 16, 2010

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.

 









                [1]As
referenced earlier, Moi is Tia’i’s sister.