

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00022-CR

---

Tajaurae Jones, Appellant

v.

The State of Texas, Appellee

---

On Appeal from the 460th District Court
Travis County, Texas
Trial Court No. D-1-DC-23-302141

---

## MEMORANDUM OPINION[1]

Appellant Tajaurae Jones was convicted of the murder of Ti'Jarious White. This appeal is about Jones's justification defenses. He challenges the jury's rejection of his self-defense claim and the omission of a jury instruction on the of protection of property defense. We affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. BACKGROUND

On July 16, 2023, shortly before 9:00 p.m., White and two friends, Jaseon Nelson and Jaron Robinson, were shopping at a Valero convenience store. According to store employees, there was nothing out of the ordinary; the three men were talking to the clerk and browsing, "like normal customers." After about five minutes, Jones arrived. As he approached the store, he drew a gun, opened the door, and, without even going inside, shot White. A store employee testified that "[t]here was [] no back and forth. It wasn't like a fight or an argument." Jones simply said, "run my shit," slang for "return my things," before shooting White. Although White and his friends had guns that night and returned fire as Jones fled, the employee said that Jones shot first and that White and his friends had not displayed any weapons before that. Surveillance video from the store confirmed the employee's account of the incident. White died at the scene.

Police found a backpack in White's vehicle containing the IDs of Jones, his girlfriend and another individual. Police also found a gun in the Valero store that was registered to Jones's sister, Denise Essence Jones (Essence).[2] On July 17, 2023, the day after the shooting, Essence made a police report, stating that she discovered that these items had been stolen from her vehicle which she had not seen since July 15.

Jones was arrested on August 4, 2023, and interviewed by Detective Joseph Moran. In the videotaped interview that was played for the jury, Jones did not deny shooting White but explained that he believed he acted in self-defense. He told Moran that sometime between 12:00 and 5:00 p.m. on the day of the shooting, White and his two friends "ambushed" him, robbed him at gunpoint, and threatened to kill him. According to Jones, and conflicting with Essence's police report, this is when White, Nelson, and Robinson stole the IDs and Essence's gun. Jones told the

---

[2] Nelson and Robinson tried to hide the gun in the ceiling of the store's bathroom. They were charged with tampering with the evidence.

detective that he tried to call 911 but White and his friends took his phone and broke it. He also said that he tried to flag down a state trooper but that the trooper ignored him. Jones explained that he eventually did call 911 from someone else's phone and was told to report the robbery online.

The murder weapon was never found. However, during their investigation, law enforcement learned that Essence, accompanied by Jones, purchased a firearm only an hour before the shooting. At trial, the defense argued that Jones armed himself because he was terrified after the robbery earlier in the day and that he confronted White and his friends to get his things back. The State argued that the shooting was not in self-defense but was planned retaliation. The jury found Jones guilty and sentenced him to 30 years in jail.

Jones contends that the evidence was legally insufficient to support the jury's rejection of his claim of self-defense (Issue One). He also asserts that the trial court erred in failing to *sua sponte* instruct the jury on the right to use deadly force to protect property (Issue Two) and that the charge error caused him egregious harm (Issue Three).

## II. ANALYSIS

### A. Self defense

The jury was instructed that it must find Jones not guilty if it found that he acted in self defense. By finding him guilty, the jury implicitly rejected Jones's defense. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc). Jones argues that the evidence was legally insufficient to support the jury's rejection.

### (1) Applicable law and standard of review

The use of force is justified and is a defense to charges of otherwise criminal behavior if it is "immediately necessary to protect the actor" when the other is using or attempting to use force in committing a variety of crimes. Tex. Penal Code Ann. 9.31(a)(1). The use of *deadly* force is similarly justified and constitutes a defense to murder when:

3

the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Tex. Penal Code Ann. 9.32(a)(2)(A), (B). The actor's belief is reasonable for the purposes of self-defense if it is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." § 1.07(a)(42). A defendant bears the burden of producing evidence to support his self-defense claim. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). The State retains its burden to prove beyond a reasonable doubt that the defendant committed an offense but does not have the burden to produce evidence disproving self-defense. *Id.*

In reviewing the sufficiency of the evidence to support a jury's rejection of self-defense, "we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914.

**(2) Application**

Jones argues that the jury's rejection of his defense is not supported by the evidence because "[t]he State produced no evidence to contradict [Jones's] claim that White robbed [him] at gunpoint." But, as explained above, the State has no burden to produce evidence to refute a claim of self-defense. *Id.* at 915.

To support his self-defense claim, Jones points to his own statement made to the police when he was arrested more than two weeks after the murder. However, the jury did not have to believe Jones's statement that he was robbed at gunpoint. "A jury is permitted to reject even uncontradicted defensive testimony, so long as its rejection of that evidence was rational in light

4

of the remaining evidence in the record and is not contradicted by indisputable objective facts." *Braughton*, 569 S.W.3d at 612. As evidence that White robbed him, Jones also points to the fact that his belongings were in White's vehicle. However, while White's possession of Jones's IDs could be explained by an aggravated robbery, as claimed by Jones, it could also be explained by theft from Essence's vehicle, as claimed by Essence. Again, the determination of which account was true was a determination for the jury to make.

Even if the jury did believe Jones, his own statements do not support his claim of self-defense. The use of force to protect oneself is not justified unless the action was "immediately necessary." Tex. Penal Code Ann. § 9.32(a)(2). "[F]orce that is 'immediately necessary' to protect oneself or another from a person's use of unlawful force is force that is needed at that moment—'when a split second decision is required.'" *Henley v. State*, 493 S.W.3d 77, 89–90 (Tex. Crim. App. 2016) (quoting *Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) *abrogated on other grounds by Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). Jones said that the robbery occurred between 12:00 and 5:00 p.m. At the very least, if Jones was to be believed, there were four hours between the alleged robbery and the shooting. Jones's decision to shoot White was not a split-second decision. Even if Jones feared what White, Nelson, and Robinson would do in the future, self-defense does not encompass "striking a preemptive first blow to prevent [] anticipated future danger[.]" *Henley*, 493 S.W.3d at 91. "[P]rior conduct is insufficient to give rise to a right to self-defense without evidence of any overt act or words that would [lead] the defendant to reasonably believe he was in *immediate* danger." *Landers v. State*, No. 05-19-00848-CR, 2020 WL 4581648, at *4 (Tex. App.—Dallas Aug. 10, 2020, pet. ref'd) (mem. op., not designated for publication); *Preston v. State*, 756 S.W.2d 22, 25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). There was no evidence that White, Nelson, and Robinson said or did anything while they were shopping at the Valero store that caused Jones to believe he

5

was in immediate danger. From the video evidence, it appears that White did not even know that Jones was there until he opened the door, gun already drawn.

Based on the evidence at trial, a rational jury could reject Jones's claim of self-defense. We overrule Jones's first issue.

## B. Omission from jury charge of protection of property defense

In his second issue, Jones argues that the trial court erred by failing to instruct the jury on the use of deadly force to protect property. Jones concedes that he neither requested the instruction nor objected to its omission. However, he contends that he was not required to do so for us to review the omission on appeal because preservation of harm affects only the amount of harm needed for reversal.

### (1) Review of jury charge error

We review a jury charge for error in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether there is error in the charge and then we determine if that error harmed the defendant. *Id.* Error preservation typically comes into the equation in the second step "because the degree of harm required for reversal depends on whether the error was preserved." *Id.*; Tex. Code Crim. Proc. art. 36.19. To obtain relief on appeal, the record must show egregious harm if error was not preserved and only some harm if error was preserved. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

A trial court has the duty, whether requested or not, to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case[.]" Tex. Code Crim. Proc. art. 36.14. The "law applicable to the case," however, does not include unrequested defensive issues. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc); *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) ("Defensive instructions must be requested in order to be considered

6

applicable law of the case requiring submission to the jury."). A trial court does not violate Article 36.14 or commit error by failing to *sua sponte* instruct the jury on a defense. *Posey*, 966 S.W.2d at 62. Therefore, for defensive issues, requesting an instruction is not only required to preserve error; it is also necessary for there to be error in the first place. If, however, the trial court does *sua sponte* include an instruction on a defense, the defense becomes "the law applicable to the case" and any defect in the instruction is error, preserved or not. *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (en banc); *Vega v. State*, 394 S.W.3d 514, 515–16 (Tex. Crim. App. 2013) ("[W]hen a trial judge instructs on a defensive issue, he must do so correctly.").

### (2) Protection of property defense

The use of force to protect property is justified "when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's . . . unlawful interference with the property." Tex. Penal Code Ann. § 9.41(a). Once the actor has been dispossessed of the property, he can use force "immediately or in fresh pursuit after the dispossession" if he "reasonably believes the other had no claim of right when he dispossessed the actor" or "the other accomplished the dispossession by using force, threat, or fraud against the actor." *Id*. § 9.41(b). A person is justified in using deadly force to protect property when, in addition to the requirements for using force, the actor:

(2) . . . reasonably believes the deadly force is immediately necessary

    (A) to prevent the other's imminent commission of arson, burglary, robbery, theft during the nighttime, or criminal mischief during the nighttime; or

    (B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

    (A) the land or property cannot be protected or recovered by any other means or

(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

Tex. Penal Code Ann. § 9.42.

### (3) Application

Jones argues that the trial court was required to instruct the jury on the protection of property defense because, even though he did not request the instruction, it was the law applicable to the case because it was raised by the evidence. The Court of Criminal Appeals in *Posey* rejected a similar argument:

> [T]he questions of whether evidence raises a particular defensive issue and of when a trial court has a duty to instruct the jury on a particular defensive issue are different questions. Though the evidence might raise a defensive issue, it does not necessarily follow that a trial court has a duty to *sua sponte* instruct the jury on that issue when the defendant does not request such an instruction.

*Id*. at 62.

Jones further asserts that that by including a self-defense instruction, the trial court was then required to also instruct the jury on defense of property because self-defense "implicates and overlaps with the right to defend property." But a defense does not become "the law applicable to the case" just because a similar defense is included in the charge. *Bennett*, 235 S.W. at 243 (holding that a request for a self-defense instruction did not preserve error for an omission of instructions on defense of a third person and defense of property). Self-defense and defense of property are different defenses in different sections of the Penal Code. *Id*. Because Jones failed to request the instruction or object to its omission, protection of property was not the law applicable to the case and the trial court did not err in failing to *sua sponte* include an instruction on the use of force to protect property in the jury charge.

However, even had Jones requested a protection of property instruction, he would not have been entitled to it. Like with self-defense, the use of force to protect property is justified only when

8

"immediately necessary." Tex. Penal Code Ann. § 9.41(a). After property has been taken, the use of force is only justified for a limited period and in limited circumstances—"immediately or in fresh pursuit after the dispossession." *Id.* § 9.41(b). Similarly, the use of deadly force is justified "to prevent the other's imminent commission" of certain crimes or "fleeing immediately after committing" the crime (including, as relevant in this case, robbery and aggravated robbery). *Id.* § 9.42. Force used to recover property that was taken during a separate, earlier encounter is not justified. *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd) (holding that appellant was not entitled to a defense of protection of property when there was a lapse of time between the drive-by shooting of appellant's house and his use of force); *Jones v. State*, 680 S.W.2d 25, 28 (Tex. App.—Houston [1st Dist.] 1984), rev'd on other grounds, 706 S.W.2d 664 (Tex. Crim. App. 1986) (en banc) (holding that defendant was not entitled to a protection of property defense because "the *theft*, if any, had occurred prior to the first or second confrontation, and the complainant was not in flight at the time deadly force was used"); *Salley v. State*, No. 14-97-00656-CR, 2000 WL 552193, at *3 (Tex. App.—Houston [14th Dist.] May 4, 2000, pet. ref'd) (not designated for publication) (holding that a defense of property instruction was not required when the appellant left the struggle with the victim, went to his vehicle, retrieved a gun, returned, and shot the victim). *Pozzerle v. State*, No. 14-14-00610-CR, 2015 WL 5935585, at *1 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, no pet.) (mem. op., not designated for publication) (defendant's use of force to recover his phone that was taken 45 minutes earlier was not justified because his actions were not immediate and he was not in fresh pursuit of the victim).

According to Jones, his property was taken from him hours earlier that day. His use of force was not immediate. Jones was not in fresh pursuit of White and White was not in the process of fleeing immediately after the robbery. Jones would not have been entitled to an instruction on the use of force to protect property even had he requested one. We overrule Jones's second issue.

9

Because we hold that the trial court did not commit error, we do not need to address Jones's third issue regarding harm.

### III. CONCLUSION

Neither self-defense nor protection of property justified Jones's murder of White because, even according to Jones's own version of events, it occurred hours after the alleged use of force by White and his friends. The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

March 3, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

10