Charles Howard JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 406–85.

Court of Criminal Appeals of Texas, En Banc.

March 26, 1986.

Janet Seymour Morrow, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and J. Harvey Hudson, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

A jury found appellant guilty of aggravated assault, and the trial court assessed his punishment at eight years' confinement in the Department of Corrections.

On appeal the appellant raised two grounds of error. One complained the trial court erred in refusing appellant's request to read to the jury all the testimony relevant to a disputed issue in response to a jury note, which error was an abuse of discretion under Article 36.28, V.A.C.C.P., and a violation of due process. The Court of Appeals rejected both grounds of error and affirmed the conviction. *Jones v. State*, 680 S.W.2d 25 (Tex.App.—Houston [1st] 1984).

We granted appellant's petition for discretionary review to determine if the Court of Appeals was correct in determining that the trial court did not abuse its discretion in refusing to have read to the jury all the testimony on the disputed issue.

The background and the facts become important to the proper disposition of the issue before us. The appellant Jones was charged with aggravated assault upon Don Ricardo Williams. Williams testified he and Frank Barnes had been drinking beer on April 15, 1981 outside a liquor store on Cullen Boulevard in Houston. They decided to take a shortcut through a laundromat to a parking lot where Williams' car was

parked. Williams related appellant Jones, manager of the laundromat, approached them and accused him (Williams) of taking "his stuff." Williams testified he didn't know what the appellant was talking about, and told the appellant he had the wrong person. Appellant insisted it was Williams. At one point Williams stated that after the initial conversation of two to three minutes, appellant pulled a gun and shot him, and then got in his car and left. At another point Williams related that after the initial conversation appellant got in his car and drove off, returned in about five minutes, again accused him of stealing and then shot him before driving off again. Williams related he had no weapon with him. Williams testified he spent nine months in the hospital and had seven operations due to the bullet wound in his abdomen.

Frank Barnes testified that as he and Williams took their shortcut through the laundromat appellant approached them and told Williams "I want my things—my stuff —." He recalled that Williams denied he had anything that belonged to the appellant. Barnes related that appellant then went to his car and drove off, but returned in five or ten minutes at which time he and Williams were outside the back door of the laundromat. Barnes testified appellant came from his car with a gun in his hand and stated he wanted something that belonged to him; that Williams "put his hands up after he seen the gun," and denied he had anything belonging to appellant. At this juncture appellant shot Williams and Barnes ran to the nearby liquor store to call the police.

Barnes expressly stated that he did not see Williams produce any weapon and did not see him reach for his back pocket immediately before the shooting.

Clyde Allen also testified for the State. He was at the rear of the laundromat with the appellant when Williams and Barnes came through the front door and called appellant's name and engaged appellant in conversation. Allen, at this point, went out the back door and sat on a bench and drank his beer. He did not hear any conversation. Later he saw Williams come out of the laundromat and then appellant came out and went to his car. He then stated:

"Mr. Jones went to his car, came back, and it was money spoken, and he stepped back and that's when the shot fired and Mr. Williams was shot."

Allen testified both on direct and cross-examination about what transpired just before the shot was fired.

The appellant testified on the day in question he had been sitting on the hood of his car when Williams, who had been drinking, approached him and asked to borrow money; that a little later Barnes came through the front door of the laundromat calling his name and stating he wanted to talk. He testified Barnes was distracting him and pulling him away from the back door, but he observed Williams "ease" in the back door; that he saw Williams reach up on the wall ledge where he kept his money and get his sack of money. Appellant kept telling Barnes to release him as the man (Williams) was taking his money. When appellant requested Williams give him the money, Williams denied having taken the money. Appellant told Williams he was going to his car, and when he returned he expected the money "to be back up there." Williams responded, "Everybody got what you got."

Appellant testified he got the gun from his car and started back in when he saw Williams outside and asked Williams if the money had been returned. Williams replied, "No, ..., but I got something else for you," and then Williams reached for his back pocket as he was moving to the right. At this time appellant admitted he shot Williams. Appellant related he thought Williams had a weapon, a gun as he had earlier said, "I got what you got," and he reached "for something"; that he (appellant) was in fear of his life.

Appellant testified that after the shooting Williams told him Frank Barnes had the money.

The trial court, inter alia, charged on the law of deadly force self-defense and the contested issue in the arguments to the jury was self-defense. This was not surprising in light of the testimony of Williams and Barnes that Williams was not armed and made no gestures or movements to his back pocket at the time of the shooting, and appellant's testimony that in addition to Williams' statements he made a hip pocket movement. Clyde Allen was the only eyewitness who was not implicated in the claimed theft or the alleged offense. He testified about Williams' gestures or movements just prior to the shooting, both on direct and cross-examination.

After the jurors retired to deliberate at the guilt stage of the trial, they sent a note to the trial judge stating:

"We would like a copy of Mr. Allen's testimony. Steven Blye, Foreperson."

The court responded:

"Dear Jurors: You must require a reading back only to resolve a bona fide dispute. You must pinpoint that testimony, for example, which attorney was conducting the examination *or* the subject matter under dispute." (Emphasis added.)[1]

The jury sent out a second note or request:

"We have a dispute as to whether or not Clyde Allen testified that Williams made a threatening gesture, that is to reach for his back pocket. Send us court records from the DA's questions."

At this juncture appellant's counsel asked the court to include in any reading of Allen's testimony all the testimony, on direct and cross-examination, touching upon the disputed issue. The court refused, expressing fear that to do so would go beyond the scope of the jury's request in light of the reference to the "DA's questions" and might even be a comment on the weight of the evidence. The appellant "excepted" to the ruling calling attention to the court's response to the jury's first note that may have caused the jury to refer only to the DA's questions and observed that it had been four or five days since Allen's testimony was given.

The testimony re-read to the jury by the court reporter was only that from the direct examination of the witness Allen.

"Q: And what did you see Mr. Williams do, if anything?

"A: Mr.—I seen Mr. Williams make one step backwards or two, I'm not sure, but he did this (*indicating*).

"Q: Could you demonstrate to the Jury what he did?

"A: Whatever was said between the two about the money, well, he made a step back and then he did this (*indicating*) and then a gun fired and he was hit.

"Q: Now, you testified that Mr. Williams stepped back and put his hand on the side (*indicating*)?

"A: Yes, ma'am.

"Q: Mr.—uh—Mr. Allen, now, during this whole course of events, did you see the complainant make any threatening move to the defendant in this case?

"A: No more than step backwards." (Emphasis added.)[2]

---

1. The court's answer or response was clearly no model, though there was no objection at the time. It referred to the necessity of a "bona fide dispute" (apparently referring to Allen's testimony though not mentioned) and then gave the jurors two alternatives. One was to state there was a bona fide dispute and point out which attorney was conducting the examination at the time. The second was to state there was a bona fide dispute and point out the subject matter of the dispute. Under the first alternative the jury could state there was a dispute without identification and point out the attorney who was conducting the examination (if they could remember which attorney). Thus all of that attorney's examination of the witness could be read to the jury without the subject matter of dispute ever being revealed. This alternative is not in accordance with Article 36.28, V.A.C.C.P., and is why the language of the response is confusing.

2. Everyone in the courtroom at the time may have known what the witness was "indicating," but the appellate record was not protected and does not reflect what the witness meant. It may be questioned when read to the jury later whether they could recall what the witness had then

Appellant requested the trial court to include the re-reading of the following from the cross-examination of Allen which the court declined to do.

"Q: Now, is it your statement that the man that was shot stepped back and some words were mumbled as he reached for his back pocket?

"A: Well, he reached back.

"Q: Well, he reached back is what I mean.

"A: Yes, sir, he did."

Article 36.28, V.A.C.C.P., provides:

"In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the *particular point in dispute,* and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony *as to the point in dispute,* and no other, as nearly as he can in the language used on the trial." (Emphasis added.)

The statute controls and limits the reading of testimony to the jury during their deliberations. If the jury requests the reading of certain testimony without more, it is proper for the court to instruct the jurors that it cannot comply with their request unless the jurors state they are in disagreement about a witness' statement or a particular point of testimony, and only this testimony and no other can be read to them.

In *Iness v. State,* 606 S.W.2d 306 (Tex.Cr.App.1980), it was written:

"It is well settled that the trial court may allow a disputed portion of a witness' testimony to be read to the jury and refuse additional testimony. Article 36.28, V.A.C.C.P.; *Nichols v. State,* 494 S.W.2d 830 (Tex.Cr.App.1973); *Johnson v. State,* 444 S.W.2d 765 (Tex.Cr.App. 1969).

"indicated." This type of interrogation is not to

"When the jury asks that certain disputed testimony be re-read (sic), the court must first determine if the request is proper under Article 36.28, supra. If it is proper, the court must then interpret the communication; decide, in its discretion, what sections of the testimony will best answer the query, and limit the testimony accordingly. See *Bonsal v. State,* 502 S.W.2d 813 (Tex.Cr.App.1973); *Swidell v. State,* 491 S.W.2d 400 (Tex.Cr. App.1973); *Duncan v. State,* 454 S.W.2d 736 (Tex.Cr.App.1970); *Alvear v. State,* 341 S.W.2d 426 (Tex.Cr.App.1960).

"In the instant case the jury's request stated that they were in disagreement concerning the penetration testimony of the witness. *Although the note mentioned the direct examination by the State, the Court did not abuse its discretion in interpreting the sentence 'we are in disagreement concerning this matter' as an expression of disagreement concerning the prosecutrix' entire testimony relating to penetration.* This was later borne out by another request to have a second reading of the appellant's cross-examination of her." (Emphasis added.)

In the case, sub judice, the jury after retirement to deliberate initially asked for Allen's testimony. The court responded there must be a "bona fide dispute" and instructed the jurors they must pinpoint testimony by "which attorney was conducting the examination *or* the subject matter under dispute. The jury in its next note identified the dispute as to whether or not Allen testified Williams made a "threatening gesture, that is, to reach for his back pocket." Having clearly identified the subject matter of the dispute, the jury added, "Send us court records from the DA's questions."

Appellant's trial counsel repeatedly asked the trial court to have the court reporter read to the jury Allen's testimony on the dispute issue from both the direct and cross-examination. He pointed out

be commended.

that the court's answer to the jury's first note was misleading in telling the jury in the alternative to point out which attorney was conducting the examination and this accounted for the last sentence in the second note. He insisted in fairness such sentence should not be used to limit the reading of Allen's testimony on the clearly disputed issue. His request was overruled.

The Court of Appeals wrote:

"In the present case, the court interpreted the jury's request as asking only for the testimony elicited by the district attorney. From the text of the note, and the requirement of the article allowing the reading of the testimony requested, we do not find the trial court abused its discretion.

"Appellant's first ground of error is overruled."

■ We do not agree. Given the circumstances, the evidence offered, the well defined dispute expressed in the jury's note, and the court's somewhat confusing answer about identifying which attorney was conducting examination, appellant's counsel's request and "exception," and the fact the evidence on cross-examination clearly bore on the disputed issue, we conclude the trial court failed to give a realistic interpretation to the jury's note.[3] While the trial court was undoubtedly being cautious, fairness did not prevail, and appellant was deprived of a fair trial. The trial court abused its discretion.

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.

CLINTON, J., concurs in the result.

---

**3.** In *Pugh v. State,* 376 S.W.2d 760 (Tex.Cr.App. 1964), a driving while intoxicated prosecution, the record reflects after the jury retired it sent a question to the court asking, "What was the date and hour the defendant was picked up by the Highway Patrolman."

The parties stipulated the date and hour as shown by the evidence and the jury again retired. Nevertheless, the trial court on its violation recalled the jury, over objection, and appar-

ently as a result of the question, had read to them the testimony of the arresting officer, none of which related to the date and hour in question. This action was held unauthorized under the statute and erroneous as bolstering the State's case. In *Pugh* the trial court had too much read to the jury, and in the instant case the trial court did not have enough read to the jury. Both actions, however, served to unnecessarily bolster the State's case.