**James Alan HORTON, Appellant**

v.

**The STATE of Texas, State**

**NO. 02-16-00229-CR**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: May 11, 2017

Discretionary Review Refused
October 4, 2017

718

ATTORNEY FOR APPELLANT: A. CLAY GRAHAM, LAW OFFICES OF A. CLAY GRAHAM, FORT WORTH, TX.

ATTORNEY FOR STATE: SHAREN WILSON, CRIM. DIST. ATTY., DEBRA WINDSOR, ASST. CRIM. DIST. ATTY., LANDON WADE, JOHN NEWBERN, CATHERINE SIMPSON, ASST. CRIM. DIST. ATTYS., FORT WORTH, TX.

## OPINION

### BONNIE SUDDERTH, JUSTICE

In three points, Appellant James Alan Horton appeals his conviction for indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). We affirm.

### Background

Appellant is the father of Andrea,[1] who was twelve years old at the time of the incident that gives rise to the allegations here. After Appellant and Andrea's mother, Jane, divorced in 2009, Andrea and her siblings spent every other weekend at the paternal grandparents' home, where Appellant also lived. When they stayed there, Andrea would often sleep in a bed with Appellant. According to Andrea, her brothers would sleep in other rooms.

Andrea testified that in January 2015, when she was 12 years old, she awakened to her father's hand rubbing her sexual organ over her clothes. Too scared to do anything, Andrea waited until Appellant stopped—approximately five minutes later, by Andrea's estimation—and then got out of bed and went to the living room, where she fell back to sleep. Andrea estimated

---

1. To protect Andrea's anonymity, we refer to children and family members by aliases. Tex. R. App. P. 9.8(b) & cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

that she went to the living room at "around 6:30 or 7:00" that morning.

According to Andrea, after she awoke that morning and before she told anyone else what had happened, Appellant approached her, apologized, and said he "didn't mean to do it." Later that day Andrea told her grandmother, Kay, what had happened and, according to Andrea, Kay cried and instructed Andrea to "keep [her] distance."

Kay also testified that Andrea approached her that day, crying, and told her that Appellant had touched her and that it had made Andrea feel "very uncomfortable." According to Kay, she tried to assure Andrea that she should not worry, that she had done the right thing, and that it would be okay. When Kay confronted Appellant about Andrea's accusation, he told her that he had accidentally touched Andrea in his sleep.

According to Jane, Appellant called her that evening and told her that "he had touched [Andrea] accidentally." Jane immediately met Andrea's grandfather and took possession of Andrea and her siblings. According to Jane, Andrea was crying "hysterically" at the time she picked her up. Kay testified to the contrary, that when Andrea left the house, she did not want to leave and pleaded with Appellant to let her stay. But her grandfather testified that Andrea wanted to go home to her mother.

Jane called the police that night.

Appellant took the stand in his own defense and testified that he believed that Andrea had told the truth when she said that he had touched her, but he denied that he had done so intentionally. Appellant claimed that when he went to bed the night before, both Andrea and her brother were in his bed watching a movie. He testified that he fell asleep before the mov-

ie ended, and when he woke up around 7:00 that morning, both children were still in his bed. Andrea was lying next to him, and according to Appellant, he reached over and touched her leg and then fell back asleep. A few minutes later, he woke up again when he felt his hand fall off of Andrea's leg. According to Appellant, at that point Andrea "was getting up, and it was pretty quick," and as she was going to the door, she turned around and looked at him, and "[he] knew something was wrong. [He] could tell." Appellant testified that he noticed that Andrea appeared to be "uncomfortable" with him that morning, and at some point, Kay relayed to him what Andrea had told her about the incident.

According to Appellant, after his conversation with Kay, he approached Andrea and said, "[Andrea], I just want you to know I'm sorry. It was an accident. I was asleep." Andrea was crying at the time, but she said, "Dad, it's okay." Appellant also admitted that he called Jane that evening and told her what had happened.

Tarrant County Sheriff's Office Detective Jerome Adams interviewed Jane and Andrea. Afterwards, he arranged for a forensic interview of Andrea. Natalie Davis, investigator for Child Protective Services, conducted the interview while Detective Adams watched it on a closed-circuit T.V. Detective Adams characterized Andrea's demeanor during the interview as "nervous." He observed that "she had her legs folded up" as she sat in the chair but that "once she started talking about the incident, she kind of broke down and started crying." Based on what he heard, Detective Adams thought Andrea "sounded like she was embarrassed."

Appellant was charged with indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(1). The jury found Appellant guilty and sentenced him to two years' confinement.

## Discussion

In his first point, Appellant argues that the trial court abused its discretion in responding to the jury's request for a re-reading of testimony. In his second and third points, Appellant argues that certain court costs imposed in accordance with the code of criminal procedure and the local government code are unconstitutional.

## I. Response to jury note

During its deliberations, the jury sent several notes to the trial court. The jury's tenth handwritten note stated, "Could we get testimony from [Andrea] and [Appellant] regarding the description of the apology[?] Did either witness The jurors are disputing what [Appellant] apologized for[.]" The court reporter prepared an excerpt of the testimony from these two witnesses that appeared to respond to the jury's inquiry. Appellant takes issue with the trial court's decision to redact certain portions of his testimony before providing the excerpt to the jury. The testimony provided to the jury appears below, except that the lines appearing in strike-through font represent the portions that were excluded by the trial court:

> Q. At that time, we're talking about—let's say 2 o'clock in the afternoon. Had you said anything to [Jane] at that point about what had happened before?
>
> A. No, sir.
>
> Q. After you had a conversation with your mom—
>
> A. And I did that intentionally even though I felt uncomfortable.
>
> Q. Wait for a question, okay?
>
> A. Yes, sir.
>
> Q. After you had a conversation with your mom, did you have a conversation with [Andrea]?
>
> A. Yes, sir.

> Q. What did you say to [Andrea]?
>
> A. I said, "[Andrea], I just want you to know, I'm sorry. It was an accident. I was asleep."
>
> And she was crying. She said, "Dad, it's okay." And I said—
>
> Q. Don't go into what she said[.]
>
> A. Okay. Okay.
>
> Q. Just I asked you what you said. So you said you were sorry?
>
> A. Yes, sir.
>
> Q. And you said it was an accident?
>
> A. Yes, sir.
>
> Q. Is that correct?
>
> A. Yes, sir.

Appellant first objected to the court's delivery to the jury of any part of his testimony quoted above. He then separately objected to the exclusion of the stricken portion on the basis that its exclusion was an improper comment on the evidence. The trial court overruled both objections.

On appeal, Appellant contends that the trial court erred in excluding the above excerpt of his testimony because, in doing so, the trial court failed to provide the full context of his interaction with Andrea to the jury. Appellant specifically argues that this exclusion unfairly and unnecessarily bolstered the State's case and Andrea's apparent acceptance of Appellant's apology places the incident in an otherwise different context.

Article 36.28 of the code of criminal procedure states, "In the trial of a criminal case[,] . . . if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, *and no other . . . .*" Tex. Code Crim. Proc. Ann. art. 36.28 (West 2006) (emphasis added). As the

court of criminal appeals has recently explained,

> When the jury asks the trial court to read back certain disputed testimony, the trial court judge must first determine if the jury's inquiry is proper under Article 36.28. If it is proper, the trial court must then interpret the communication and decide what sections of the testimony will best answer the inquiry. The trial court has discretion to decide "what sections of the testimony will best answer the query, and limit the testimony accordingly." However, if a trial court reads too much or too little testimony to the jury, such a response may serve to bolster the State's case unnecessarily. An appellate court should not disturb a trial court judge's decision under Article 36.28 unless a clear abuse of discretion and harm are shown.

*Thomas v. State*, 505 S.W.3d 916, 923 (Tex. Crim. App. 2016) (citations omitted). As the court of criminal appeals has also explained, this rule attempts to strike a balance between the need to assist the jury in resolving disputes about the evidence itself, on the one hand, and the concern that trial courts not comment on the weight of the evidence, on the other. *Balderas v. State*, No. AP-77, 517 S.W.3d 756, 797–98, 2016 WL 6496715, at *30 (Tex. Crim. App. Nov. 2, 2016).

█ "The test for an abuse of discretion … is a question of whether the court acted without reference to any guiding rules or principles. The mere fact that a trial judge may decide a matter within its discretionary authority differently than an appellate judge does not demonstrate such an abuse." *Megason v. State*, 19 S.W.3d 883, 889 (Tex. App.—Texarkana 2000, pet. ref'd). When the jury requests a specific and limited portion of testimony, the trial court does not abuse its discretion by excluding a portion of the testimony that is not responsive to the jury's specific inquiry. *Ford v. State*, 444 S.W.3d 171, 185 (Tex. App.—San Antonio 2014), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 2380, 195 L.Ed.2d 268 (2016); *Arnold v. State*, 234 S.W.3d 664, 677 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Robison v. State*, 888 S.W.2d 473, 481 (Tex. Crim. App. 1994)); *see also Render v. State*, 316 S.W.3d 846, 854–55 (Tex. App.—Dallas 2010, pet. ref'd) (holding that when the jury sent a note asking about how certain abuse had occurred, the trial court did not abuse its discretion by excluding testimony about when the abuse occurred in its response).

Appellant points to *Jones* and *Brown* to support his contention that the trial court abused its discretion. *Brown v. State*, 870 S.W.2d 53, 56 (Tex. Crim. App. 1994); *Jones v. State*, 706 S.W.2d 664, 668 (Tex. Crim. App. 1986). Appellant's reliance on these cases for that proposition is misplaced, however, as these cases actually support the trial court's ruling here.

*Jones* stands for the proposition that a trial court should not exclude testimony that is directly related to the issue in dispute. *Jones*, 706 S.W.2d at 668. In *Jones*, the court held that the trial court abused its discretion by limiting its response in such a manner as to exclude testimony that "*clearly* bore *on the disputed issue.*" *Id.* at 668 (emphasis added).

*Brown* provides a corollary to *Jones*. In *Brown*, the court found no abuse of discretion where the trial court refused to narrow the testimony because, in that case, the entirety of the testimony selected by the court was necessary to address the dispute identified by the jury in its question. *Brown*, 870 S.W.2d at 56.

Here, the jury's note requested testimony from Andrea and Appellant concerning the "description of the apology" and specif-

ically noted a dispute among the jurors over "what [Appellant] apologized for." The note therefore focused on what Appellant said to Andrea the morning after the incident, not on how Andrea reacted or what she said in response. Because the trial court in this case strictly complied with article 36.28 by conveying to the jury the "particular point in dispute, and no other" and did not omit testimony that clearly bore on the disputed issue as identified by the jury, we cannot conclude that the trial court abused its discretion by excluding the portion of testimony relating Andrea's reaction to Appellant's apology. Tex. Code Crim. Proc. Ann. art. 36.28; *see also Jones*, 706 S.W.2d at 668. We therefore overrule Appellant's first point.

## II. Consolidated court costs

In his second and third points Appellant argues that the "child abuse prevention fee" assessed in accordance with article 102.0186 of the code of criminal procedure and the "consolidated court cost" assessed in accordance with section 133.102(a)(1) of the local government code are unconstitutional. Tex. Code Crim. Proc. Ann. art. 102.0186 (West Supp. 2016) (providing for assessment of $100 fee upon conviction of certain sex-related crimes); Tex. Local Gov't Code Ann. § 133.102(a)(1) (West Supp. 2016) (providing for assessment of $133 fee for felony convictions). Appellant asks that we so hold and that we modify the trial court's judgment to delete each of the assessed costs.

Article 102.0186 provides that a person convicted of certain sex-related crimes, including indecency with a child, shall pay $100 on conviction of the offense to be deposited in a "child abuse prevention fund" administered by the commissioners court of the county in which the trial court is located. Tex. Code Crim. Proc. Ann. art. 102.0186.

Section 133.102 states that the comptroller must allocate the court costs received under that section to fourteen accounts and assigns percentages to each account. Tex. Local Gov't Code Ann. § 133.102(e). Appellant specifically complains of the percentage allocations of funds to "abused children's counseling," *id.* § 133.102(e)(1), "law enforcement officers standards and education," *id.* § 133.102(e)(5), and "comprehensive rehabilitation," *id.* § 133.102(e)(6).

Appellant contends that article 102.0186 and the selected provisions of section 133.102 are unconstitutional because they violate the separation of powers clause of the Texas Constitution and allow money to be gathered and spent for purposes that are too remote from criminal justice. *See* Tex. Const. art. II, § 1; *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015) ("[I]f the statute under which court costs are assessed . . . provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not . . . violat[e] . . . the separation of powers clause." (footnote omitted)), *cert. denied*, —— U.S. ——, 136 S.Ct. 1188, 194 L.Ed.2d 202 (2016).[2]

### A. Sections 133.102(e)(1) and (6)

█ In its recent decision in *Salinas v. State*, No. PD-0170-16, 523 S.W.3d 103, 108–09, 110–11, 2017 WL 915525, at *4, *5 (Tex. Crim. App. Mar. 8, 2017), the court of criminal appeals partially upheld the same argument Appellant now advances.

---

**2.** The State contends that Appellant has waived his second and third points by failing to raise them first in the trial court, but we have held that these complaints may be raised for the first time on appeal. *See Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.—Fort Worth 2016, pet. ref'd).

In *Salinas*, the court declared section 133.102 facially unconstitutional in violation of the separation of powers clause of the Texas Constitution to the extent it allocates funds from the consolidated fees to the "comprehensive rehabilitation" account and the "abused children's counseling" account because these subsections do not serve a "legitimate criminal justice purpose." *Id.* (invalidating Tex. Loc. Gov't Code Ann. § 133.102(e)(1), (6)). We therefore sustain Appellant's point to the extent that it complains of the allocation of funds under those two subsections. However, we do not agree that Appellant is entitled to the relief he seeks.

In a letter brief to this court, Appellant argues that he is entitled to a reduction of $13.07 in the amount of court costs assessed against him. However, as will be explained below, the court of criminal appeals, in addressing the retroactive effect of its holding in *Salinas*, expressly excluded from retroactive application those cases in the appellate posture that this case occupies. *Id.* at 111–13, 2017 WL 915525 at *6.

First the court of criminal appeals determined that the *Stovall* test applied to determine retroactivity because the unconstitutional provisions of section 133.102 violated a right of the courts, not any personal right of the defendant. *Id.*; *see Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967) (noting that retroactivity of new constitutional rule of criminal procedure depends on (1) the new rule's purpose, (2) how much law enforcement relied on the old rule, and (3) the effect retroactivity would have on the administration of justice). The court of criminal appeals held that all three *Stovall* factors weighed against retroactivity, observing that (a) the purpose of requiring a defendant to pay a fee has "nothing to do with the truth-finding function of a criminal trial," (b) the State's reliance interest in the statutorily-provided revenue stream is significant, and (c) imposing the holding retroactively could "create large administrative burdens on court clerks throughout the state." *Salinas*, 523 S.W.3d at 112, 2017 WL 915525 at *6.

Yet, recognizing "the need to reward parties who persuade a court to overturn an unconstitutional statute," the court concluded that its holding applied retroactively *only* to the parties before it and "to any defendant who ha[d] raised the appropriate claim in a petition for discretionary review before the date of [the *Salinas*] opinion," if the petition was pending on the date of the opinion. *Id.* The court of criminal appeals further emphasized in a footnote that only those cases pending in its court as of the date of the opinion were appropriate for relief. *Id.* at 113, n.54, 2017 WL 915525 at *6, n.54.

Thus, although we recognize that the court of criminal appeals has held that the provisions of section 133.102 allocating funds to the "comprehensive rehabilitation account" and the "abused children's counseling account" are unconstitutional, Tex. Local Gov't Code Ann. § 133.102(e)(1), (6); *Salinas*, 523 S.W.3d at 108–09, 110–11, 2017 WL 915525, at *4, *5, we nevertheless must follow the directive of the court of criminal appeals which precludes us from retroactively modifying Appellant's court costs to delete those fees.[3] *Id. See*

---

3. To the extent that the dissent suggests that the Supreme Court's holding in *Griffith v. Kentucky* precluded the application of *Stovall's* retroactivity analysis in *Salinas*, we point out that the concern expressed in *Griffith* related to the conducting of trials using different standards and rules. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (holding that "a new rule *for the conduct of criminal prosecutions* is to be applied retroactively to all cases, state or federal, pending on direct review or not yet

*also Hawkins v. State*, No. 02-16-00104-CR, —— S.W.3d ——, ——, ——, 2017 WL 1352097, at *2 (Tex. App.—Fort Worth Apr. 13, 2017, no pet. h.) (recognizing that the *Salinas* decision precludes us from modifying the trial court's judgment to delete court costs held unconstitutional in that decision).

**B. Section 133.102(e)(5) and article 102.0186**

■ Appellant additionally argues that section 133.102(e)(5) of the local government code, which allocates funds to "law enforcement officers standards and education," and article 102.0186 of the code of criminal procedure, which allocates funds to "child abuse prevention," are unconstitutional for the same reasons he argues with respect to sections 133.102(e)(1) and (6).

We have previously rejected the precise challenges brought by Appellant to both section 133.102(e)(5) and article 102.0186 and held that both are facially constitutional. *Ingram*, 503 S.W.3d at 748–49. Since the issuance of *Salinas*, we have also rejected the exact challenges brought by Appellant to section 133.102(e)(5). *Hawkins*, 523 S.W.3d at 106–07, 2017 WL 1352097, at *2. In so doing, we noted that *Salinas* did not change the applicable test we use to determine whether a statute requiring the collection of fees in a criminal case violates the separation of powers clause. *Id.* (citing *Salinas*, 523 S.W.3d at 106–07, 2017 WL 915525, at *2). Accordingly, we decline Appellant's invitation to revisit these issues, and therefore again hold that section 133.102(e)(5) and article 102.0186 are facially constitutional. We therefore overrule the remainder of Appellant's second and third points.

**Conclusion**

Having sustained Appellant's third point to the extent that sections 133.102(e)(1) and (6) are unconstitutional but also recognizing the limitation placed on our ability to reform Appellant's judgment to delete the costs related to those sections, and having overruled the remainder of Appellant's points, we affirm the judgment of the trial court.

LIVINGSTON, C.J., filed a dissenting opinion in which MEIER, J., joins.

TERRIE LIVINGSTON, CHIEF JUSTICE, dissenting.

In a brief that appellant James Alan Horton filed with this court in October 2016, he argued that provisions within section 133.102 of the local government code were facially unconstitutional because those provisions violated the separation of powers clause of the Texas constitution. *See* Tex. Const. art. II, § 1; Tex. Loc. Gov't Code Ann. § 133.102 (West Supp. 2016). Specifically, appellant challenged the constitutionality of subsections 133.102(e)(1), which required him to pay a cost related to "abused children's counseling," and 133.102(e)(6), which required him to pay a cost related to "comprehensive rehabilitation." *See* Tex. Loc. Gov't Code Ann. § 133.102(e)(1), (6). Appellant asked us to modify the judgment to delete those costs.

Months later, in *Salinas v. State*, the court of criminal appeals adopted appellant's position, declaring those subsections facially unconstitutional for the precise reasons he had urged. No. PD-0170-16, 523 S.W.3d 103, 108–11, 2017 WL 915525, at

---

final") (emphasis added). As the court of criminal appeals has held that the unconstitutional provisions of section 133.102 violated a right of the courts, not any personal right of

any defendant, it does not appear to us that the holding in *Salinas* is at odds with the holding in *Griffith*. *Salinas*, 523 S.W.3d at 111–13, 2017 WL 915525, at *6.

*4–5 (Tex. Crim. App. Mar. 8, 2017). By declaring the subsections facially unconstitutional, the court of criminal appeals signified that there are no circumstances in which those provisions could ever be constitutionally applied. *See id.* at 106–07, 2017 WL 915525, at *2; *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 1188, 194 L.Ed.2d 202 (2016).

But under the majority's opinion in this appeal, the *Salinas* decision, as it applies to appellant, represents a hollow victory. The majority's opinion recognizes the facial unconstitutionality of court costs assessed against appellant and requires him to pay them anyway. Because I believe that the trial court's judgment must be modified to delete the costs, I must dissent.[1] *See Bridges v. State*, No. 06-16-00162-CR, 2017 WL 1424811, at *1 (Tex. App.—Texarkana Apr. 19, 2017, no pet. h.) (mem. op., not designated for publication) (applying the constitutional holding in *Salinas* and modifying a judgment to eliminate the costs under section 133.102 attributable to abused children's counseling and comprehensive rehabilitation).

A facially unconstitutional statute is "stillborn"; it is void from its inception; it is "as if it had never been." *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015); *see also Void*, Black's Law Dictionary (10th ed. 2014) (stating that a void act is "of no effect whatsoever"). No rights may be "built up" under such a statute, and such a statute is of "no more force or validity than a piece of blank paper." *Reyes v. State*, 753 S.W.2d 382, 383 (Tex.

Crim. App. 1988). Such a statute "amounts to nothing and accomplishes nothing and is no law." *Id.* In other words,

> An act that has been declared unconstitutional is, in legal contemplation, as inoperative as though it had never been passed or written, and it is regarded as invalid, or void, from the date of enactment (not only from the date on which it is judicially declared unconstitutional) and at all times thereafter.

16 C.J.S. *Constitutional Law* § 265 (2017) (footnotes omitted).

The majority's opinion in this appeal does not treat the offending subsections of section 133.102 as "stillborn"; rather, the opinion provides those void subsections with effect and vitality by requiring appellant to pay costs associated with them. In reaching this conclusion, the majority relies on the retroactivity analysis provided by the majority opinion in *Salinas*. *See* 523 S.W.3d at 110–13, 2017 WL 915525, at *5–6. There, the court of criminal appeals described several approaches that courts may take in determining the retroactivity of a judicial holding. *See id.* Relying on the United States Supreme Court's decision in *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), the court of criminal appeals opted to use a three-pronged balancing approach[2] that applies to a "new construction of a state statute." *Salinas*, 523 S.W.3d at 112, 2017 WL 915525, at *6. Weighing the considerations identified in *Stovall*, the court in *Salinas* reached a holding of limited retroactivity:

1. I join the majority's opinion to the extent that it overrules appellant's first and second points. I dissent only to the extent that the opinion does not grant appellant relief after sustaining his third point.

2. The court considered "(1) the purpose to be served by the new standards, (2) the extent of

reliance by law enforcement authorities on the old standards, and (3) the effect a retroactive application of the new standards would have on the administration of justice." *Salinas*, 523 S.W.3d at 112, 2017 WL 915525, at *6.

We ... recognize the need to reward parties who persuade a court to overturn an unconstitutional statute, and we conclude that applying the new constitutional rule to the parties in the present case is necessary, but not quite sufficient to satisfy that need. Other defendants have challenged one or both of the fees at issue in petitions for discretionary review before this Court and can be said to have exerted some influence in procuring our current holding. Therefore, we will also apply our constitutional holding in this case to any defendant who has raised the appropriate claim in a petition for discretionary review before the date of this opinion, if that petition is still pending on the date of this opinion and if the claim would otherwise be properly before us on discretionary review. Otherwise, our holding will apply prospectively to trials that end after the date the mandate in the present case issues.

*Id.* (footnote omitted).

Therefore, the court of criminal appeals recognized the nugatory nature of the offending subsections of section 133.102 for two groups of defendants: (1) those who were fortunate enough—either because they committed crimes earlier or had trials that were speedier—to have been convicted and to have reached the petition for discretionary review stage of litigation before the date of the *Salinas* opinion, and (2) those who are fortunate enough—either because they will be charged with committing crimes later or will have had a slower pace of proceedings—to delay their trials until after the court of criminal appeals's mandate issues. But the court of criminal appeals purported to breathe life into stillborn statutory provisions while leaving out an intermediate group of defendants such as appellant even if those defendants raised a constitutional challenge to section 133.102 before the date of the court's decision.

This unequal treatment of defendants—opening the doors for some of them to enjoy relief from a facially unconstitutional statute and closing the doors for others—raises concerns of due process, due course of law, equal protection, and equal access to courts. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19; *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) ("This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."); *Vaughn v. State*, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996) ("The only right that the federal constitution confers to criminal defendants in the context of an appeal is that, if a state provides an appeal by statute, it must provide access to the appellate courts in a way that does not violate the Equal Protection Clause of the Fourteenth Amendment.").

Furthermore, the court of criminal appeals's reliance on the *Stovall* balancing test as a means of carefully selecting which defendants will continue to be burdened by a lifeless, facially unconstitutional statute was misplaced. *Stovall* concerned the retroactivity of prior Supreme Court decisions relating to the unconstitutional admission of tainted identification evidence. 388 U.S. at 294, 87 S.Ct. at 1968. In other words, *Stovall* addressed the retroactivity of a court-fashioned constitutional rule. *See id.* The Court did not purport to apply its three-pronged test to considering the retroactivity of a decision that declares a statute facially unconstitutional. *See id.*

Nor could it.[3] As explained by the dissenting opinion in the court of criminal appeals's *Ex parte Fournier* decision, "retroactivity" in the circumstance of a facially unconstitutional statute is a misnomer:

> Given [the] general rule ... that an unconstitutional statute is inoperable "from its inception[,]" ... it may seem redundant or even pointless to engage in an analysis of retroactivity of the judicial decision that declared the statute to be unconstitutional. After all, it was not the judicial decision that nullified the statute; the statute was stillborn. *Any analysis of retroactivity would surely result in a conclusion that the judicial opinion recognizing the facial unconstitutionality of a penal statute should be applied retroactively.* Thus, any time a penal statute is declared facially unconstitutional—at least in the usual sense that it is invalid under some constitutional principle *in all of its applications*—it would make sense to hold the opinion declaring the facial unconstitutionality of the penal provision to apply to any and every individual ever convicted under that provision, in the future and in the past.

473 S.W.3d 789, 801 (Tex. Crim. App. 2015) (Yeary, J., dissenting) (emphasis added).[4] Or as explained by the Illinois Supreme Court,

A constitutionally repugnant enactment suddenly cuts off rights that are guaranteed to every citizen ... and instantaneously perverts the duties owed to those citizens. To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This would clearly offend all sense of due process under both the Federal and State Constitutions.

*People v. Gersch*, 135 Ill.2d 384, 142 Ill. Dec. 767, 553 N.E.2d 281, 287 (1990).

Given these considerations, the retroactivity analysis in *Salinas* following the declaration in that opinion that provisions of section 133.102 are facially unconstitutional was unnecessary and inappropriate. Although the court held that retroactivity principles are "implicated if the holding of a court announces a 'new' rule"—*Salinas*, 523 S.W.3d at 111, 2017 WL 915525, at *5—the effect of the constitutional holding in that case was not to announce a "new" rule but instead was to recognize and declare the ineffectual, void nature of the challenged provisions within section 133.102 from the date of the statute's enactment.

---

3. Furthermore, I note that after the decision in *Stovall*, the Supreme Court issued an opinion that limited *Stovall'* s application, and in that decision, the Court stated that a "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987); *see also Taylor v. State*, 10 S.W.3d 673, 678 (Tex. Crim. App. 2000) (recognizing that in *Griffith*, the Supreme Court "repudiated the *Stovall* doctrine of retroactivity and its underlying rationale").

4. The dissenting opinion in *Fournier* ultimately reasoned that a statute that is overbroad is not void from its inception and that a decision declaring a statute overbroad—as opposed to facially unconstitutional in all applications—should be applied prospectively. 473 S.W.3d at 802–04 (Yeary, J., dissenting). The majority opinion in *Fournier* did not disagree with the dissenting opinion's explanation of the effect that a facially unconstitutional statute has on retroactivity concerns. *See id.* at 790–96.

Presiding Judge Keller joined Judge Yeary's dissenting opinion in *Fournier* (therefore indicating her agreement with these principles) but authored the majority opinion in *Salinas* that applied a retroactivity analysis to a facially unconstitutional statute.

In sum, the effect of the holding regarding retroactivity in *Salinas*, as well as the effect of the majority's decision in this appeal, is on one hand recognizing and declaring that the assailed provisions of section 133.102 are facially unconstitutional because those provisions are infirm *"in all ... applications"* while on the other hand continuing to *apply* those provisions to defendants like appellant. *See id.* at 106, 2017 WL 915525, at *2 (emphasis added). The unmistakable result is that defendants convicted both earlier and later than those in the first step of appellate review, without regard to preservation of error, are entitled to relief. Because such a decision rests on inconsistent reasoning and violates principles of due process, due course of law, equal protection, and equal access to courts, I dissent.

MEIER, J., joins.